**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shane Betts, | No. CV-22-01186-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Mark Brnovich, *et al.*, | |
| Defendants. | |

At issue are six Motions to Dismiss (Docs. 23, 25, 26, 28, 29, 37) filed by all the named Defendants in this matter. Also at issue are two Motions for Sanctions (Docs. 57, 58) filed by *pro se* Plaintiff Shane Betts.

**I.     BACKGROUND**

In the Amended Complaint (Doc. 9, Am. Compl.), Plaintiff recounts the facts giving rise to his current claims as well as the history of a state court lawsuit that underpins the present lawsuit, and the Court has done its best to piece together the facts alleged. Plaintiff was a participant in the Southwest Airlines Group Employee Welfare Benefit Plan for health care coverage, which is regulated under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA), and administered by UnitedHealthcare.

After a motor vehicle accident in September 2015, Plaintiff received medical treatment from Defendant Dr. Samuel Carr, DC, who was a health care provider within the network of Plaintiff's health care Plan. Plaintiff had treated with Dr. Carr in the past, and

Dr. Carr had always collected payment from Plaintiff's Plan under the terms of the Plan. Dr. Carr recommended that Plaintiff hire an attorney acquaintance of Dr. Carr, Defendant Joseph Silence, to pursue his personal injury claim against the other driver. After Plaintiff hired Mr. Silence, Dr. Carr and his wife, Defendant Tammy Carr, on behalf of their business—Defendant Samuel Carr DC PC LLC (collectively, "the Carrs")—filed and recorded medical liens under A.R.S. § 33-931 for the costs of Plaintiff's medical treatment, for which Mr. Silence accepted liability for the costs of medical care on behalf of Plaintiff without his permission. The Carrs mailed these liens to Mr. Silence, and Plaintiff was unaware of them, all the while believing that the Carrs were billing and collecting payment for his medical treatment from his Plan.

In December 2015, Plaintiff was in an even more severe motor vehicle accident, and he continued to treat with Dr. Carr and to be represented by Mr. Silence. He alleges he stopped making progress in Dr. Carr's care and requested to stop treatment in April 2016; treatment ended in May 2016. Plaintiff claims Dr. Carr then falsified a release that claimed to have healed Plaintiff, which was not disclosed to Plaintiff and which the Carrs used to show medical necessity for the liens. After completing treatment with Dr. Carr, other medical treatment revealed Plaintiff had a torn labrum in his hip that required surgery.

Plaintiff terminated Mr. Silence as his counsel in July 2016 after Mr. Silence refused to correct a false insurance claim he filed on Plaintiff's behalf. Upon his termination, Mr. Silence filed an attorney's charging lien on Plaintiff's personal injury claim. At this point, Mr. Silence also informed Plaintiff of the medical liens he had secured with the Carrs. The Carrs confirmed that they filed the liens to secure debts with the third-party car insurance company, Amica.

In August 2016, Plaintiff filed claims for the costs of his medical treatment with the ERISA Plan using medical bills the Carrs provided, and the Plan denied them because an "incorrect or inappropriate primary diagnosis code was used." (Am. Compl. ¶ t.) Plaintiff timely appealed the denial to the Plan and received this response:

> We have determined that these claims were denied correctly. The claims are denied because of the inappropriate billing of services. We have sent request to the provider for correct billing. Per the provider contract, you are not responsible for these claims. If the provider does not agree with this determination, they can submit an appeal on their behalf.

(Am. Compl. ¶ w.) A second appeal to the Plan concluded similarly. (Am. Compl. ¶ x.) Plaintiff alleges Tammy Carr later testified to receiving the requests to correct the diagnosis codes, and she never corrected them.

In December 2017, before the surgery to correct his hip, Plaintiff asked the third party auto insurance company, Amica, to confirm it would cover what Plaintiff claimed was ongoing medical treatment from the December 2015 accident. Amica refused based on Dr. Carr's release claiming to have healed Plaintiff by May 2016. After Plaintiff secured coverage by the Plan for the surgery, Plaintiff "settled with Amica" his personal injury claim from the December 2015 car accident. (Am. Compl. ¶ ee.)

Plaintiff contends the medical liens filed and recorded by the Carrs with the aid of Mr. Silence defrauded Plaintiff of the protections afforded under the Plan terms and ERISA. Under the terms of the Plan and the related in-network contract, the Plan pays medical providers directly for medical claims, and "[i]f Provider collects payment from, brings collection action against or asserts a lien against a Member for Covered Services rendered (other than for applicable Member Expenses), Provider shall be in breach of this agreement." (Am. Compl. ¶ j.) Plaintiff claims that the liens filed by both the Carrs and Mr. Silence against Plaintiff's settlement fund were invalid.

An Arizona Court of Appeals decision, which Plaintiff attached to the Amended Complaint, recounts the procedural history of the related dispute in the Arizona judicial system. (Doc. 9 at 78–80, Ariz. Ct. App. Decision dated Nov. 30, 2021.) The medical lien, comprised of the medical bills owed to the Carrs, was for $8,574, and the attorney services lien, comprised of Mr. Silence's contingency fee of 30% of an offer from the insurer to settle Plaintiff's claim, was for $9,000. After Plaintiff settled with Amica for $34,244.10, Amica agreed to pay Plaintiff $16,670.10 but filed an interpleader action in the superior

court for an allocation of the remainder. Dr. Carr and Mr. Silence filed crossclaims against Plaintiff for breach of contract, and Mr. Silence also requested the reasonable value of his services under a *quantum meruit* theory.

The lawsuit proceeded to mandatory arbitration, wherein the arbitrator ruled in favor of Dr. Carr and Mr. Silence on the breach of contract and *quantum meruit* claims. Plaintiff, appearing *pro se*, appealed to the superior court, and the case proceeded to a two-day bench trial, in which the court admitted over 50 exhibits and heard the testimony of five witnesses. The court gave Plaintiff half the trial time, and Dr. Carr and Mr. Silence split the rest. The court entered judgment for Dr. Carr and Mr. Silence and denied Plaintiff's motions for a new trial and relief from judgment. The court also awarded Dr. Carr and Mr. Silence their attorneys' fees.

Plaintiff then appealed to the Arizona Court of Appeals. On November 30, 2021, the three-judge appellate panel entered a decision affirming the superior court. Specifically, that court concluded in relevant part that Plaintiff's argument that the liens were invalid was irrelevant, because the court decided the case not by enforcing the liens, but rather by resolving crossclaimants' breach of contract and *quantum meruit* claims. The court also found no merit to Plaintiff's argument that Dr. Carr should have billed the Plan directly for Plaintiff's medical treatment. The court focused on the language of the contract between Plaintiff and Dr. Carr that Plaintiff was responsible for the medical bills "regardless of [his] insurance status." The court also stated that Plaintiff "argues that Dr. Carr's contract claim was preempted under [ERISA], but he never develops the argument or provides supporting authority." (Ariz. Ct. App. Decision at 3 n.2.)

Plaintiff filed this lawsuit on July 15, 2022. In the Amended Complaint, he brings four ERISA-related claims against the Carrs under 29 U.S.C. § 1132(a)(1)(B) (Counts A1–A4), arguing that the terms of his Plan have applied to compensate the Carrs for his medical treatment. In Count A5, Plaintiff claims that Mr. Silence improperly acted on his behalf to waive coverage under the Plan, in violation of ERISA. Counts B1–B4 are again against the Carrs for ERISA violations, now under 29 U.S.C. § 1132(a)(3), and Count B5 is against

Mr. Silence under the same section. Plaintiff brings Counts B6–B8 under the same section against state court judges Hon. Peter Swann and Hon. Joseph Mikitish, and in Count B9 he names former Arizona Attorney General Mark Brnovich.

In Count C1, Plaintiff sues the state court judges and Mr. Brnovich under 42 U.S.C. § 1983, claiming that Arizona's compulsory arbitration requirement violates due process. In Count C2, Plaintiff sues Mr. Silence and his counsel in the state court action, Larry Lynde, under § 1983 for their calculation and assertion of attorneys' fees by way of an attorney services lien. In Count C3, Plaintiff likewise sues the Carrs and their counsel in the state court action, Jeffery Bradford, under § 1983 for asserting a medical lien.[1] Finally, in Counts D1 through D3, Plaintiff raises civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims under 18 U.S.C. § 1964(c) against the Carrs, Mr. Silence, and Mr. Bradford.

The Court screened Plaintiff's original Complaint and dismissed it, stating that (1) he had not alleged facts to support a lawsuit against state court judges for errors he alleged they made in their decisions; (2) he could not sue private actors under § 1983; and (3) he was barred from relitigating claims and issues he brought or could have brought in the state court action. (Doc. 5.) The Court ultimately permitted Plaintiff to amend the Complaint if he could cure the defects identified by the Court, and Plaintiff filed the Amended Complaint (Doc. 9).

By way of six Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), all Defendants now seek dismissal of all 20 claims brought against them. (Docs. 23, 25, 26, 28, 29, 37.) In turn, Plaintiff has filed two Motions for Sanctions against Defendants for arguments they made in their briefing. (Docs. 57, 58.) The Court now resolves all pending Motions.

## II.   LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to

---

[1] In the Amended Complaint, Plaintiff mislabels Count C3 as Count C2.

- 5 -

state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.   ANALYSIS**

In general terms, so far as the Court understands the Amended Complaint, this is a case in which a medical care provider essentially billed a patient who was in a car accident directly for the resulting medical care instead of billing his ERISA Plan, and the at-fault driver's insurance policy covered some or all of the patient's medical costs. As a result, instead of the Plan seeking subrogation from the third-party insurer—or compensation

from the insurance settlement—for medical care coverage the Plan would have provided for the patient's medical treatment, the medical care providers sought compensation directly from the insurance settlement. In essence, the Plan was left out of the accounting, but in either instance reimbursement for the patient's medical costs would have been sought from the insurance settlement.

Plaintiff has raised myriad issues under the provisions of ERISA, § 1983, and the federal civil RICO statute regarding how the medical care provider, and then Plaintiff's counsel, billed for their services, and subsequently how the parties' counsel, the state court judges, and the state Attorney General conduct their work. Considering this case has already been through arbitration, motion practice and a bench trial in the state superior court, and an appeal in the state court of appeals, the Court must determine whether any of Plaintiff's claims are properly before this Court.

**A.     Section 1983**

**1.     Claims Against Private Counsel and Parties**

In Counts C2 and C3, Plaintiff brings § 1983 claims against Mr. Silence and his counsel—Larry Lynde—and the Carrs and their counsel—Jeffrey Bradford. The Court already addressed this in its prior Order (Doc. 5), which Plaintiff either failed to understand or entirely ignored. There, the Court stated: "According to the allegations, neither the attorneys nor parties were agents of the state, as required to bring claims under these statutes; rather, they were acting in their private capacities. As such, Plaintiff cannot bring claims against them under 42 U.S.C. §§ 1983 or 1985, as he attempts to do." (Doc. 5 at 3.)

With regard to Mr. Lynde and Mr. Bradford, simply because an attorney is an "officer of the court," as Plaintiff repeatedly states, does not mean he is a state actor for purposes of bringing a constitutional claim such as the one Plaintiff attempts to bring under § 1983. A state actor is one who acts for or on behalf of the state; for example, a state actor is typically paid out of the state budget. A private attorney representing a private party is not acting on behalf of the state, and a plaintiff cannot bring a claim that the state somehow violated the Constitution through the actions of a private attorney not affiliated with the

state. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotations omitted)). The Amended Complaint contains no non-conclusory allegations that Mr. Lynde or Mr. Bradford were state actors. Likewise, considering Plaintiff's allegations, Mr. Silence and the Carrs were obviously not state actors.

The Court does not find Plaintiff can cure this defect by further amendment, and the Court will thus dismiss Counts C2 and C3 against Mr. Lynde, Mr. Bradford, Mr. Silence, and the Carrs with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000). Because Count C2 is the only claim Plaintiff raised against Mr. Lynde, the Court will grant Mr. Lynde's Motion to Dismiss (Doc. 23).[2]

**2.     Claim Against the Attorney General and State Court Judges**

In Count C1, Plaintiff raises a § 1983 claim against the Arizona Attorney General—now Kristin K. Mayes[3]—and state court judges Hon. Peter Swann and Hon. Joseph Mikitish—who presided over portions of Plaintiff's state court actions—claiming that the Arizona judiciary's compulsory arbitration process violates due process.

The Eleventh Amendment prevents a state from being sued in federal court without its consent. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008). When the state is "the real, substantial party in interest," Eleventh Amendment immunity extends to "suit[s] against state officials." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quotations omitted). *Ex parte Young* provides an exception to Eleventh Amendment immunity, but it applies only to "claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*,

---

[2] Mr. Lynde also asks the Court to adjudicate Plaintiff a "vexatious litigant." The Court will deny that request, because the filing of a single lawsuit generally does not rise to the level of vexatiousness. (Doc. 23 at 14–15.)

[3] The Attorney General's Office filed a Notice of Substitution of Public Officer (Doc. 61) to substitute Kristine K. Mayes for Mark Brnovich.

209 U.S. 123 (1908)). Specifically, "federal courts may in some circumstances grant injunctive relieve against state officers who are violating, or planning to violate, federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

With regard to Plaintiff's claim against the Attorney General, Plaintiff has not and cannot allege that the Attorney General is violating or plans to violate federal law by enforcing the rule of the state judiciary—a separate branch of state government—compelling arbitration in certain lawsuits, because the Attorney General has no such enforcement power. As a result, the Attorney General shares the state's Eleventh Amendment immunity and the *Ex Parte Young* exception does not apply. *See, e.g.*, *Confed. Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469–70 (9th Cir. 1999) (concluding the plaintiff could not bring claim against the governor to challenge actions of the state lottery where the governor was not directly charged with operating the lottery); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (noting "a generalized duty to enforce state law . . . will not subject an official to suit").[4] The Court will thus dismiss Count C1 against the Attorney General with prejudice.

With regard to Plaintiff's claim against the state court judges, *Ex parte Young* does not provide an exception to Eleventh Amendment immunity with regard to judicial officers in this instance, because they "do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 532 (2021). "As *Ex parte Young* put it, 'an injunction against a state court' or its machinery would be a violation of the whole scheme of our Government." *Id.* Plaintiff alleges no facts that would provide an exception to this principle. Accordingly, the Court will also dismiss Count C1 against the state court judges with prejudice.

---

[4] In a separate Motion for Sanctions (Doc. 57), Plaintiff argues that this is somehow inconsistent with the Ninth Circuit Section 1983 Outline, which is a resource for legal practitioners working on § 1983 cases in the Ninth Circuit. *See* https://www.ca9.uscourts.gov/guides/section-1983-outline/. It is not. The outline specifically cites *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) ("[U]nder *Ex parte Young*, [Eleventh Amendment] immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with the enforcement of the act." (internal quotation marks and citation omitted)).

**B.     ERISA**

Plaintiff brings 14 claims—Counts A1–A5 and B1–B9—under ERISA, naming as Defendants Mr. Silence, the Carrs, the state court judges, and the Attorney General in those claims. As the Court already stated in its prior Order (Doc. 5)—again disregarded by Plaintiff—to the extent Plaintiff's claims are based on his contention that the state court judges erred in reaching their judgments, the *Rooker-Feldman* doctrine bars Plaintiff's claims. The *Rooker-Feldman* doctrine derives from two Supreme Court decisions, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). First in *Rooker* and later in *Feldman*, the Supreme Court held that federal district courts cannot review state court decisions in an appellate capacity. The Ninth Circuit Court of Appeals has stated that *Rooker-Feldman* "prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing *de facto* appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "It is a forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2004). Plaintiff's claims against state court judges in the Complaint fall squarely within the ambit of *Rooker-Feldman* by attempting to challenge the state court judgments regarding his health benefit plan, and those claims are thus barred.

To the extent Plaintiff claims the parties in the state court action violated ERISA in their conduct processing and billing his health benefits, Plaintiff brought or could have brought those claims in the state court action, and the claims and associated legal issues are thus barred by the doctrines of *res judicata* and collateral estoppel. The judicially created doctrine of claim preclusion, or *res judicata*, "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (internal quotations and citations omitted). Federal courts must look to state law to determine the preclusive effect of a state court judgment. *See Intri-Plex Techs., Inc. v.*

*Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). In Arizona, *res judicata* will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties was, or might have been, determined in the former action. *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999).

Relatedly, the doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action." *State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 229 P.3d 242, 256 (Ariz. Ct. App. 2010). "The elements necessary to invoke collateral estoppel are as follows: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties." *Id.* Unlike claim preclusion, issue preclusion is available to a party who was not involved in the prior suit, so long as it is asserted against a party that was. *Sees v. KTUC, Inc.*, 714 P.2d 859, 862 (Ariz. Ct. App. 1985).

Plaintiff continues to claim an exception to these doctrines based on his assertion that the state court had no jurisdiction over the action before it because it lacked jurisdiction under ERISA, 29 U.S.C. § 1132(e), to resolve what he frames as a request for injunctive relief under § 1132(a)(3) in Counts B1–B9. To begin with, the dispute underlying Plaintiff's claims in Counts A1–A5 explicitly involves a claim for benefits under an ERISA health care plan under §1132(a)(1)(B), over which the state court had jurisdiction under § 1132(e). Plaintiff thus cannot challenge the state court's decision by arguing that the state court lacked jurisdiction under those sections.

Next, even if the Court assumes that Plaintiff's present claims under § 1132(a)(3) (Counts B1–B9)—over which ERISA provides that the federal district court has exclusive jurisdiction by way of § 1132(e)—have merit, Plaintiff did not raise those claims or the possibly related issues, such as jurisdiction or preemption, in the state court action. Indeed, the Arizona Court of Appeals explicitly found that Plaintiff never developed an argument under the provisions of ERISA or provided any supporting legal authority. (Ariz. Ct. App.

- 11 -

Decision at 3 n.2.) This Court cannot conclude that the state court had no jurisdiction over the case based on claims or defenses Plaintiff never brought before the state court.[5] Plaintiff had ample opportunity to bring any claims or defenses in the state court action, and he is now barred by the principles of *res judicata* and collateral estoppel from bringing them here.[6]

In sum, Plaintiff's claims in the Amended Complaint attempt to relitigate the claims and issues resolved by the state court judges, now under provisions of ERISA that Plaintiff never properly brought before the state court. To the extent he brings those claims against the litigants in the state court action, they are precluded.

Plaintiff also names the Attorney General as Defendant in Count B9. Again, Plaintiff has not and cannot claim that the Attorney General is violating or plans to violate federal law, in this instance by enforcing or failing to enforce provisions of ERISA in the decisional law of the state judiciary—a separate branch of state government—because the Attorney General has no such enforcement power. The Attorney General thus shares the state's Eleventh Amendment immunity and the *Ex Parte Young* exception does not apply. *See, e.g.*, *Confed. Tribes & Bands of the Yakama Indian Nation*, 176 F.3d at 469–70; *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704.

For all these reasons, the Court will dismiss Counts A1–A5 and B1–B9 with prejudice.

C. **Civil RICO**

Finally, in Counts D1–D3, Plaintiff brings federal civil RICO claims against Mr. Silence, the Carrs, and the Carrs' counsel, Mr. Bradford.

Section 1964 of RICO provides a private right of action for a plaintiff who has suffered injury to property because of a defendant's violation of 18 U.S.C. § 1962. Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in,

---

[5] Likewise, the Court cannot conclude that the state breach of contract and *quantum meruit* law applied by the state courts was precluded by ERISA when Plaintiff did not properly bring the provisions of ERISA before the state court.

[6] Had he so chosen, Plaintiff also could have used the removal statutes to bring the case to federal court when properly asserting ERISA claims or defenses.

or the activities of which affect interstate commerce, to conduct, or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Thus, in addition to alleging an effect on interstate commerce, Plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

Plaintiff's non-conclusory allegations in the Amended Complaint are insufficient to raise a plausible inference that the named Defendants engaged in an enterprise of racketeering activity in interstate commerce. Moreover, just as Plaintiff is estopped from bringing ERISA claims against these Defendants that he could have brought in the state court action, for the reasons the Court stated above, he is estopped from now bringing a racketeering claim against them. Accordingly, the Court will dismiss Counts D1–D3 with prejudice.

### D.     Motions for Sanctions

The Court finds no sanctionable conduct in the briefing by the attorneys representing Defendants in this action and will therefore deny Plaintiff's Motions for Sanctions (Docs. 57, 58).

**IT IS THEREFORE ORDERED** granting the pending Motions to Dismiss (Docs. 23, 25, 26, 28, 29, 37), with the exception that the Court declines to sanction Plaintiff or declare him a vexatious litigant at this point.

**IT IS FURTHER ORDERED** denying Plaintiff's Motions for Sanctions (Docs. 57, 58).

**IT IS FURTHER ORDERED** dismissing the Amended Complaint (Doc. 9) with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment and close this case.

Dated this 22nd day of February, 2023.

_____
Honorable John J. Tuchi
United States District Judge